# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:17-cr-167-MOC-DCK-1

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| vs. | ) |
| | ) **ORDER** |
| **BOBBY LANELL HARGROVE,** | ) |
| | ) |
| Defendant. | ) |
| | ) |

**THIS MATTER** is before the Court on Defendant's second pro se Motion for Compassionate Release/Reduction of Sentence, Motion to Appoint Counsel. (Doc. No. 45). Defendant is serving a 93-month sentence after being convicted of conspiracy to commit Hobbs Act robbery, Hobbs Act robbery, and discharging a firearm during and in furtherance of a crime of violence. Defendant seeks early release from prison under 18 U.S.C. § 3582(c)(1)(A) based on the COVID-19 pandemic and because he states that he needs to take care of his elderly mother. The Government has responded in opposition to the motion.

## I. BACKGROUND

In October 2016, Defendant and an accomplice walked into the Cash America pawnshop on Wilkinson Boulevard in Charlotte, North Carolina. (Doc. No. 23 at ¶ 5: PSR). Both men were wielding a handgun and a hammer. (Id.). Defendant had a hood over his head and a scarf covering his face, and he was wearing gloves. (Id. at ¶ 6). The men went to the cash registers, pointed their guns at the employees, and ordered them to open the registers. (Id. at ¶ 7). The employees complied, and the men took the money from the cash drawers. (Id.). After the accomplice unsuccessfully attempted to break the glass covering the jewelry counter with his

-1-

hammer, an employee unlocked the counter.  (Id.).  The accomplice filled his bag with jewelry and left the store.  (Id.).

Defendant stayed behind, pointing his handgun at three employees and directing them to the back of the store.  (Id. at ¶ 9).  Defendant found the store's safe and began taking firearms.  (Id.).  He became angry and threatened to start shooting when he could not locate the clips for the firearms.  (Id.).  Charlotte-Mecklenburg police officers arrived, and two of the store employees were able to escape.  (Id. at ¶ 10).  Defendant pointed his weapon at the two officers who entered the store.  (Id.).  He then threw one of the firearms he had stolen toward the officers and yelled that he was unarmed.  (Id.).  However, when he next encountered an officer, he pointed a firearm at the officer and fired.  (Id.).  One of the officers returned fire, shooting Defendant in the shoulder.  (Id.).  Defendant then surrendered.  (Id.).

Defendant pleaded guilty to conspiracy to commit Hobbs Act robbery, Hobbs Act robbery, and discharging a firearm during and in furtherance of a crime of violence.  (Doc. No. 1: Plea Agrmt.; Doc. No. 18: Entry & Accept. of Plea).  This Court sentenced Defendant to 93 months of imprisonment.  (Doc. No. 29: Judgment; PSR at ¶ 60; Doc. No. 30: SOR).  He did not appeal.

Defendant is currently incarcerated at the United States Penitentiary in Yazoo City, Mississippi.  349 staff members and 1,670 inmates in the Yazoo City complex have been fully inoculated for Covid-19.[1]  See https://www.bop.gov/coronavirus/ (last accessed May 11, 2021).  According to BOP, currently no inmates at USP Yazoo City have tested positive for Covid-19,

---

[1] There are three facilities in Yazoo City: the USP; FCI Yazoo City Medium; and FCI Yazoo City Low.

but seven staff members have tested positive, one inmate has died, and 237 inmates and 12 staff members have recovered from the virus. (Id.).

In February 2021, Defendant filed a motion seeking to complete the remainder of his sentence on "24-hour house arrest," citing his having tested positive for Covid-19, as well as chronic asthma and bronchitis. (Doc. No. 38 at 1–2). He also asserted that his mother was "nearly immobile" and needed his assistance. The United States moved to dismiss Defendant's motion without prejudice for failure to exhaust his administrative remedies, and the Court granted the motion to dismiss without prejudice. (Doc. No. 43). Defendant filed the pending motion on April 19, 2021. The Government has responded in opposition.

Defendant is 23 years old, and his projected release date is May 21, 2023. (Doc. No. 47-1 at 3: Gov. Ex. 1). He has served over four and a half years of his sentence, which is approximately two-thirds of his statutory sentence and over half of his full term. (Id.). He has had one disciplinary sanction for possessing an unauthorized item, a phone, in December 2018. (Doc. No. 47-2: Gov. Ex. 2). Defendant tested positive for Covid-19 on December 15, 2020, and was "symptomatic." (Doc. No. 48 at 14–15, 37, 68, 71: Gov. Ex. 3). By February, his medical notes indicated that his Covid-19 condition had been resolved. (Id. at 68). On March 1, 2021, Defendant saw a doctor regarding a leg problem and asked for an inhaler refill. (Id. at 1). Defendant reported no shortness of breath, fever, chills, or fatigue. (Id.). The doctor noted that Defendant had "no documentation for asthma," but ordered a routine chest x-ray based on his reported history of asthma. (Id. at 3, 27). On April 12, 2021, a chest x-ray revealed that Defendant's lungs were clear, his heart was a normal size, and he did not have acute cardiopulmonary disease. (Id. at 27). On April 14, 2021, Defendant was offered the Pfizer

Covid-19 vaccine, but he refused to be vaccinated. (Id. at 19, 26).

## II.  DISCUSSION

By its terms, 18 U.S.C. § 3582(c)(1)(A) permits the Court to reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has issued a non-binding policy statement addressing motions for reduction of sentences under § 3582(c)(1)(A).[2] As relevant here, the non-binding policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction"; (ii) "the defendant is not a danger to the safety of any other person or to the

---

[2] In a recent decision, the Fourth Circuit determined that the policy statement is no longer binding on courts deciding compassionate release motions because U.S.S.G. § 1B1.13 was enacted before the First Step Act. United States v. McCoy, 981 F.3d 271 (4th Cir. 2020). Specifically, the Fourth Circuit held that the policy statement found in U.S.S.G. § 1B1.13 does not apply to compassionate release motions brought by inmates under 18 U.S.C. § 3582(c)(1)(A)(i). Id. at 281–83. The McCoy Court reasoned that, because Section 1B1.13 applies only to motions brought by the Bureau of Prisons, it cannot be the policy statement applicable in circumstances where defendants bring their own motions for compassionate release. Id. In place of the no-longer-applicable policy statement, McCoy permits "courts [to] make their own independent determinations of what constitutes an 'extraordinary and compelling reason[ ]' under § 3582(c)(1)(A), as consistent with the statutory language[.]" Id. at 284. The McCoy Court noted, however, that Section 1B1.13 "remains helpful guidance even when motions are filed by defendants." Id. at 282 n.7. Because this Court finds that the policy statement is extremely helpful in assessing motions for compassionate release brought by defendants, the Court will rely on it as guidance.

community, as provided in 18 U.S.C. § 3142(g)"; and (iii) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.

The policy statement includes an application note specifying the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is: (I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. U.S.S.G. § 1B1.13, cmt. n.1(B)-(C).

Finally, in addition to the non-binding policy statement, the Fourth Circuit has recently clarified that courts may make their own independent determinations as to what constitute "extraordinary and compelling reasons" to warrant a reduction of sentence under Section 3582(c)(1)(A). United States v. McCoy, 981 F.3d 271 (4th Cir. 2020).

The mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, cannot alone provide a basis for a sentence reduction. The conditions described in U.S.S.G. § 1B1.13 encompass specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. As the Third

Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

That does not mean, however, that COVID-19 is irrelevant to a court's analysis of a motion under Section 3582(c)(1)(A). If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of "extraordinary and compelling reasons." Under these circumstances, a chronic condition (i.e., one "from which [the defendant] is not expected to recover") reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii)(I).

Defendant's request for a sentence reduction will be denied because he has failed to show extraordinary and compelling circumstances warranting his early release from prison. Defendant has not shown that he has a serious medical condition that substantially diminishes his ability to provide self-care within a correctional facility, particularly where the coronavirus vaccine has been made available to him, but he has refused to be vaccinated. Defendant argues that he has had chronic asthma and bronchitis all of his life, that he tested positive for Covid-19 on December 15, 2020, and that he still suffers with shortness of breath and dizziness. (Doc. No. 45 at 3). He asserts that he is not receiving proper medical treatment because he does not have access to his asthma pump and a chest exam was ordered over three months ago, but has not yet been done. (Id. at 3–4). He also contends that he is overweight. (Id. at 3).

Although Defendant's medical records indicate that he has reported having a history of asthma, he does not appear to have been diagnosed with asthma or received medication for asthma in the past year.[3] Accordingly, he does not meet the criteria for having moderate to severe asthma,[4] which is the form of asthma that the CDC has identified as placing a person at greater risk of severe illness from Covid-19. See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed May 11, 2021). His records also do not show a history of bronchitis, and he has received a recent chest x-ray that did not present any areas of concern. (Doc. No. 48, Gov. Ex. 3 at 27). Although it is not clear what symptoms Defendant exhibited when he had Covid-19, his later medical records do not reflect complaints of shortness of breath or dizziness. See, e.g., (Id. at 1).

Based on Defendant's weight and height, 255 pounds, id. at 2, and 6'3" tall, PSR p.3, his BMI appears to qualify him as obese, although his medical records do not show such a diagnosis or area of concern. The CDC has identified obesity as condition that may make a person more likely to get severely ill from Covid-19. See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-withmedical-conditions.html. However, such a condition no longer

---

[3] Defendant's PSR also indicates that he reported a history of asthma. (PSR at ¶ 50). However, he also has denied a history of respiratory issues. (Doc. No. 48 at 50).

[4] The National Asthma Education and Prevention Program describes "moderate persistent asthma" as present if any of the following is true: (i) symptoms occur daily and inhaled short-acting asthma medication is used every day; (ii) symptoms interfere with daily activities; (iii) nighttime symptoms occur more than 1 time a week, but do not happen every day; or (iv) lung function tests are abnormal (more than 60% to less than 80% of the expected value), and PEF [peak expiratory flow] varies more than 30% from morning to afternoon. See https://www.uofmhealth.org/health-library/hw161158 (last accessed May 2, 2021); see also National Asthma Education and Prevention Program, Expert Panel Report 3: Guidelines for the Diagnosis and Management of Asthma 74, available at https://www.nhlbi.nih.gov/health-topics/guidelines-for-diagnosis-management-of-asthma (last accessed May 2, 2021).

qualifies as an "extraordinary and compelling reason" here because Defendant has refused to be vaccinated. (Doc. No. 48 at 19, 26). Given this refusal, he cannot show that any susceptibility to Covid-19 caused by his obesity presents a condition that "substantially diminishes" his ability to provide self-care in prison. See U.S.S.G. § 1B1.13 app. note 1(A)(ii); United States v. Patterson, 2021 WL 1553824, at *3 (W.D.N.C. Apr. 20, 2021) (denying compassionate release where inmate refused vaccine and thus "voluntarily declined to 'provide self-care' and mitigate his risk of a severe COVID-19 infection"); United States v. McBride, 2021 WL 354129, at *3 (W.D.N.C. Feb. 2, 2021) (denying compassionate release to diabetic inmate who refused Covid-19 vaccine), appeal filed (Feb. 16, 2021). The Pfizer vaccine offered to Defendant has been approved by the FDA for emergency use based on its conclusion that, in extensive testing, the vaccine was 95% effective in preventing COVID-19 infection, including in participants with medical comorbidities associated with high risk of severe COVID-19 disease. See FDA Decision Memorandum, Pfizer—Dec. 11, 2020, https://www.fda.gov/media/144416/download.

Defendant also has not shown that his family circumstances warrant compassionate release. He asserts that his mother has severe arthritis in her hands and feet and often cannot get out of bed or bathe herself, so his assistance is needed. (Doc. No. 45 at 4; PSR at ¶ 46). Moreover, Defendant has indicated that his younger brother lives with his mother and that he has other siblings. (Doc. No. 38 at 2; PSR at ¶ 47). Thus, he has not shown that he is the only possible caregiver. Defendant's desire to care for his mother does not rise to the level of an "extraordinary and compelling" reason for compassionate release. See United States v. Hooks, 2021 WL 796156, at *3 (W.D.N.C. Mar. 2, 2021) (denying compassionate release where defendant sought to care for mother with terminal cancer diagnosis); United States v. Crandle,

2020 WL 2188865, at *4 (M.D. La. May 6, 2020) (noting inmate failed to present evidence that he was the only possible caregiver for his ailing parents); United States v. Gaskin, 2020 WL 7263185, at *4 (E.D. Pa. Dec. 9, 2020) (denying compassionate release where inmate did not allege he was the only available caregiver, and the court determined that "the desire to care for elderly parents" does not qualify as extraordinary).

Even if Defendant could show an extraordinary and compelling reason to grant compassionate release, this Court should deny a sentence reduction unless it determines the defendant "is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Additionally, this Court must consider the § 3553(a) factors, as "applicable," as part of its analysis. See § 3582(c)(1)(A); United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020).

Here, Defendant has failed to demonstrate that he is not a danger to the safety of the community or otherwise merits release under the § 3553(a) factors. Defendant's committed an armed robbery of a store, threatening employees at gunpoint, pretending to put down a firearm, and then shot at a police officer. Defendant also has a prior conviction for misdemeanor larceny and resisting a public officer, and his probation for that offense was revoked. (PSR at ¶ 36). The nature and circumstances of the offense, the need to afford adequate deterrence, and to protect the public counsel against a reduction in sentence. Likewise, the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, and to avoid unwarranted sentencing disparities does not support reducing Defendant's sentence, particularly where he was sentenced well below the guidelines range. See (PSR at ¶¶ 58–60; Judgment).

Defendant's efforts in working while incarcerated and obtaining a number of educational and vocational certificates, Doc. No. 45 at 5–6, are commendable, but his downplaying his disciplinary infraction of possessing a phone, which poses a number of safety issues, raises concerns. See (Doc. No. 45 at 6 (stating he has had "only one minor incident his whole incarceration"); Doc. No. 38 at 2 (stating "I have had no infractions in nearly my whole incarceration")). Thus, the Section 3553(a) factors do not weigh in favor of his release.

In sum, for all these reasons, the Court denies Defendant's motion. This Court notes that, in light of United States v. McCoy, the Court has made its own independent determination as to what constitute "extraordinary and compelling reasons" to warrant a reduction of sentence under Section 3582(c)(1)(A). Having thus considered defendant's motion and reviewed the pleadings, the Court enters the following Order.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's pro se Motion for Compassionate Release/Reduction of Sentence, Motion to Appoint Counsel, (Doc. No. 45), is **DENIED**.

Signed: June 1, 2021

Max O. Cogburn Jr
United States District Judge